M'INTIRE
v.
THE STATE.

---

M'INTIRE *v.* THE STATE.

That part of the statute concerning internal improvements, approved the 27th of *January*, 1836, which provides that in the assessment of damages, &c., the benefits resulting to the complainant, from the construction of the work occasioning the injury complained of, shall be taken into consideration, is not unconstitutional.

The clause in the constitution which provides, that a just compensation shall be made for private property taken for public use, means, not that the property thus taken shall be valued and its price paid in money, but that the owner shall be recompensed for the actual injury he may have sustained—all circumstances considered—by the measure of which he complains.

The constitutionality of a statute is not affected by its confining the assessment for benefits arising from a public work, to him who claims compensation for property used in its accomplishment.

*Tuesday,*
*November 24*

APPEAL from the *Jefferson* Circuit Court.

DEWEY, J.—This was a claim for damages, by *M'Intire* against the state, for land and materials taken from him, for the purpose of constructing the *Madison* and *Lafayette* railroad, under the internal improvement act, passed *January* the 27th, 1836.   The matter was acted upon by appraisers appointed by the board of internal improvement, and taken, by appeal from their decision, into the Circuit Court.

It was proved on the trial, that a part of the *Madison* and *Lafayette* railroad had been located over the land of the complainant, about eight acres of which it had rendered use-less to him; and that a large quantity of sand and earth had been taken from other portions of his premises, and used in the construction of the road; that the land and materials thus appropriated were valuable, but that the benefit to the complainant, arising from the increased value of his adjacent

lands in consequence of the construction of the road, was greater than the damages occasioned by the application of his property to public use.

The complainant moved the Court to instruct the jury, that so much of the statute under which the proceedings were had "as provides that, in the assessment of damages, the benefits resulting to the complainant from the construction of the work occasioning the injury shall be taken into consideration, is void and unconstitutional;" and that in assessing complainant's damages, the jury should take into consideration the value of the land and materials at the time they were taken, without regard to any benefit which might result to him from the construction of the work. This instruction the Court refused to give, but charged the jury that the provision of the statute referred to was constitutional; and that if the value of the complainant's property, appropriated to the public use, did not exceed the benefit resulting to him from the improvement, he was not entitled to damages.

The jury found for the defendant, and judgment was rendered accordingly. The complainant has appealed to this Court.

The only question, submitted to our consideration on the present occasion, is the constitutionality of the clause of the act alluded to in the instruction to the jury.

It is contended by the appellant that that provision of the statute contravenes the 7th section of the 1st article of the constitution, which provides that no man's property shall be taken or applied to public use " without a just compensation being made therefor." There is no difficulty in understanding this language. Whenever the public, in the exercise of sovereign power, appropriates to its own use private property, it must render therefor a fair recompence—something equivalent.

The ground assumed by the counsel for the appellant is, that the property thus taken must be estimated at its market value at the time of taking, and its price paid in money. The appellee, without controverting the first branch of this proposition, contends that the compensation may be made in the manner prescribed by the statute in question, that is, by weighing against the injury sustained by an individual by

the public appropriation of his property, the benefits accruing to him from the improvement in making which his property has been used. The real controversy is not as to the measure of damages, but as to the mode of compensation contemplated by the constitution.

This question is new in our Courts, but a similar question received a legislative and practical answer more than forty years ago. The ordinance of congress for the government of the territory of the *United States* north-west of the river *Ohio*, passed in 1787, contains a clause requiring " compensation" for private property taken for public exigencies. Before the division of the territory, the territorial legislature, held at *Cincinnati* in 1799, enacted, that when a person, through whose land a public road was proposed to be run, should claim damages therefor, the persons chosen to assess the same " should take into their consideration how much less valuable such land would be rendered" by reason of the contemplated road, should it be opened, and assess damages to the claimant accordingly. Territorial Acts 1799, respecting highways, sect. 3. This law remained in force in 1807, when it was incorporated into the revised code of that year, R. C. 1807, p. 292; and it was the law of the *Indiana* territory when the state constitution was adopted. With this state of things, the framers of that instrument must have been familiar; and with this long continued exposition of the meaning of the restrictive clause of the ordinance before their eyes, we cannot suppose that in transferring that restriction into the constitution, they designed to change its construction. Accordingly, we find that the first state legislature, in which were many of the members of the convention, repassed the law on this subject as it stood before. Laws of 1817, p. 74. It was re-enacted in the session of 1818, Laws of 1818, p. 275; continued in the revision of 1824, p. 357; and remained thus until 1831, when the same principle was recognized in different language, and is still recognized. R. C. 1831, p. 446.—R. S. 1838, p. 494.

From this review of the statutes bearing on the question before us, and embracing the very time of the adoption of the constitution, we cannot doubt that its authors, in providing that "just compensation" should be made for private

property taken for public use, designed to convey the meaning which had been attached to that phrase by the community for more than seventeen years, and which has since remained unquestioned for a longer period of time. That meaning is, not that property thus taken shall be valued and its price paid in money, but that the individual who claims to be a sufferer, in consequence of the exercise of the right of eminent domain over his property, shall be recompensed for the actual injury which he may have sustained, all circumstances considered, by the measure of which he complains. In ascertaining the extent of the injury, undoubtedly, an estimation of the value of the property taken, at the time of taking, is a necessary step; but if the benefits really and substantially resulting to the claimant equal, in pecuniary value, the value of that of which the public has deprived him, we conceive they constitute a just and constitutional compensation for the deprivation to which he has been subjected; and such, in our opinion, is the nature of the benefits contemplated by the statute in question—the enhancement of the value of property by the construction of a public improvement.

We are not aware that a different view of this subject has been taken by the Courts of any of the states. One of the counsel of the appellant has cited the language of several *American* judges in support of his position, that the compensation contemplated by the constitution is the payment in money of the market price of the property taken. But none of the decisions which he has quoted sustains this position. The observations to which he has referred in the case of *Parks* v. *The City of Boston*, 15 Pick. 198, related to another point. That case is very similar to the one under consideration. It was a claim by a citizen of *Boston* against the city for damages caused by taking a small quantity of his land, by the proper authority, for the purpose of widening a street. The issue was damage or no damage. The complainant offered evidence of the value of his land at a *period subsequent to the taking*, to wit, at the time of trial. The testimony was rejected; and the Court charged the jury, " that the complainant was entitled to recover the value of the land *at the time when it was taken*, with interest from that

time, subject to a reasonable deduction, if he were consequen-
tially benefited by widening the street, or with additional
damages, if. he were consequentially damnified by taking part
of his land and thereby injuring the residue." The correct-
ness of the latter branch of this instruction was not ques-
tioned, although the constitution of *Massachusetts* contains
the compensation-clause. The controversy was confined to
the rejection of the testimony, and to that part of the charge
which fixed the time at which the land was taken, as the
proper period at which to estimate its value. In enforcing
the soundness of the doctrine sustained in that portion of the
instruction, it was that Ch. J. *Shaw* used the language alluded
to; and we have no doubt of its correctness. The whole
case, however, has a strong bearing in support of the conclu-
sion to which we have arrived with regard to the nature of
the compensation contemplated by our constitution. The
same question was open under the constitution of that com-
monwealth, and was embraced in the instruction to the jury
which we have quoted, and if it was not made *res adjudicata*
in the case, it must have been because it was considered too
plain for debate.

Another of the cases in which the remarks of a judge, rather
than the decision of the Court, have been relied on by the
appellant, is *In the matter of Albany street in New-York, &c.*,
reported in 11 Wend. 149. That case is founded on a sta-
tute of that state, which authorizes the taking of private pro-
perty for public use, and which contains the principle that in
estimating the compensation therefor, the benefit arising to
the owner of the property taken, from the improvement to
which his property has been applied, shall be considered.
The constitution of *New-York* accords with ours on the sub-
ject of compensation. The facts were, that a street was laid
out through a cemetery belonging to trinity church, and that
the commissioners appointed for that purpose, in assessing
the damages which the church had sustained by reason of
the location of the street, estimated the land taken at its value
as building lots, and in assessing the benefits resulting to the
church, they estimated that part of the cemetery not taken
for the street at its value as a burying ground. This dis-
tinction the Court decided was wrong, and set aside the

report of the commissioners, because, in assessing damages and benefits to the church, they had adopted different standards of valuation. Several other similar cases have occurred in *New-York* under the same statute, but the constitutionality of the principle which it contains—that the benefits resulting from a public improvement shall be offset against the damages sustained by an individual in taking his property to construct that improvement, has never been questioned.

It is true, that the statute of *New-York* contains one feature which our act establishing a system of internal improvement does not. It provides that the owners of land adjacent to the new street, whose property has not been taken, but who may have received a benefit from the street, shall be assessed accordingly, for the purpose of raising a fund to meet the assessments of damages. This, certainly, is an equitable provision, and is easily practicable in a law having for its object the improvement of the streets of a city. There is no difficulty in such cases in perceiving at a glance, what property is enhanced in value by the change, and to what extent; nor is there, ordinarily, much danger that the assessment for benefit will be grievously burdensome to the owners of property subject to it. The same, however, cannot be said, with equal truth, of a similar provision in a general system like ours, which contemplates turnpikes, railroads, and canals, traversing the whole state in every direction, and running many hundreds of miles through a new and unimproved country. Indeed, were such a principle in such a system feasible in other respects, it would frequently meet with great practical difficulty in the inability of landholders to advance in money the value of the benefits they would receive. But, however this matter may be, we conceive the constitutionality of a law is not affected by confining the assessment for benefits arising from a public work, to him who claims compensation for property used in its accomplishment. If others, whose property the public exigency does not require, are equally benefited, it must be set down as one of those chances by which fortune distributes her favours—a distribution which no legislature, or other earthly power, can render equal among men.

*Per Curiam.*—The judgment is affirmed with costs.
*M. G. Bright* and *S. C. Stevens*, for the appellant.
*J. G. Marshall* and *C. Cushing*, for the appellee.