STATE OF INDIANA *v.* REID ET AL.

[No. 26,023. Filed April 28, 1933.]

*James M. Ogden,* Attorney-General, and *Connor D. Ross,* Assistant Attorney-General, for the State.
*Asa Elliott* and *Frank S. Houston,* for appellees.

TREANOR, C. J.—Appellant filed its complaint for condemnation of certain real estate of appellees. To the award of the appraisers, appellees excepted, and, upon trial by jury, judgment was rendered in favor of appellees, from which this appeal is taken. Appellant assigns as error that the court erred in overruling its motion for a new trial. The motion for new trial is based upon grounds which present for review the method of proof, as well as the measure of damages sustained by appellees. The trial court confined the proof (and also the instructions) to the theory that the damages could be proved by asking the witnesses whether the defendants' property had been damaged and if it had, the amount of the damages, and refused to permit appellant to attempt to establish the amount of damages by proof of the market value of the defendants' real estate before and after the establishment and construction of the highway.

Appellant's contention is that the question of the amount of damages "is to be determined by the entire effect of the establishment and construction of the highway" and that the state has "the right to show and have the benefit of any good effects of the new road upon the property." Appellant also insists that the method of proof followed was erroneous in that the witnesses were permitted to answer the exact question which was before the jury.

Appellant strongly and ably urges that this court erroneously decided the case of *State of Indiana* v. *Brubeck* (1930), *ante* 1, 170 N. E. 81, in holding that the value of benefits cannot be set off against damages to land occasioned by a "taking" under the power of eminent domain; and that in so holding this court "announces a rule clearly violative of the constitution and one unsupported by the statute relied upon."

We are unable to understand how §6 of the eminent

domain statute[1] (Acts 1905, p. 59, §7685, Burns Ann. Ind. St. 1926) can be construed otherwise than as prohibiting the consideration of benefits in all cases coming within the purview of the statute with the possible exception of cases of "taking" by municipal corporations; and we feel that uniform judicial and legislative usage in this state precludes the possibility of construing the term "municipal corporation," as used in §6, to include the state of Indiana. This conclusion forces the consideration of the constitutionality of §6 as thus construed. If the words "just compensation" as used in Art. I, §21, of the Indiana Constitution require that benefits be included in the determination of damages in cases of taking of land it follows that our construction of §6 renders it invalid.

There is no agreement in the decided cases as to the

---

[a] "Such appraisers shall take an oath that they have no interest in the matter and that they will honestly and impartially make such assessment.

They shall determine and report:

First. The value of each parcel of property sought to be appropriated, and the value of each separate estate or interest therein;

Second. The value of all improvements thereon pertaining to the realty;

Third. The damages to the residue of the land of such owner or owners to be caused by taking out the part sought to be appropriated;

Fourth. Such other damages as will result to any persons or corporation from the construction of the improvements in the manner proposed by the plaintiff;

Fifth. In case the land is sought to be taken by a municipal corporation for a public use that confers benefits on any lands, the report shall also state the benefits which will accrue to each parcel of property, set opposite each description of the same, whether described in the complaint or not. In estimating the damages specified in the foregoing first, second, third and fourth clauses, no deduction shall be made for any benefits that may result from such improvement. For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the service of the notice provided in section three, and its actual value, at that date, shall be the measure of compensation for all property to be actually taken and the basis of damages to property not actually taken but injuriously affected, except as to the damages stated in the fourth clause hereof."

proper use of "benefits" in determining "just compensation."

"In some states the consideration of benefits is prohibited by the constitution. Sometimes the statute conferring authority to condemn prohibits any deduction for benefits in estimating the compensation or damages. In the absence of any such constitutional or statutory provisions, it becomes a question of construction as to the meaning of the phrase 'just compensation' in the constitution. The decisions may be divided into five classes according as they maintain one or the other of the following propositions:
First. Benefits cannot be considered at all.
Second. Special benefits may be set off against damages to the remainder, but not against the value of the part taken.
Third. Benefits, whether general or special, may be set off as in the last proposition.
Fourth. Special benefits may be set off against both damages to the remainder or the value of the part taken.
Fifth. Both general and special benefits may be set off as in the last proposition.
It will be observed that these propositions pass from one extreme to the other." Lewis, Eminent Domain, 3d Ed. Vol. II, §687, pp. 1177-1178.

As indicated by the foregoing there is ample judicial authority to support a holding that the constitutional requirement of "just compensation" is satisfied by a rule which would allow special benefits to be set off against the value of the part taken and the damage to the residue; or by a rule which would allow special benefits to be set off against only the damage to the residue. There is also some authority for the exclusion of benefits. In the absence of any special statutory or constitutional provisions we should be inclined to adopt the following rule suggested by Lewis:

"Where part of the tract is taken, just compensation would, therefore, consist of the value of the part taken and damages to the remainder, less any

special benefits to such remainder by reason of the taking and use of the part for the purpose proposed; or, what is the same thing, it is the value of the whole tract irrespective of the taking less the value of that which is not taken, taking into consideration the purpose for which the part taken is to be used and excluding any but special benefits to the property which remains. Just compensation, thus estimated, is a sum of money which makes the owner whole, and, in respect to general benefits or damages resulting from the work or improvement, leaves him in as good a situation as his neighbor no part of whose property has been taken." Lewis, Eminent Domain, §693, p. 1199. See also Cooley, Constitutional Limitations, pp. 567-570.

Appellant is correct in his insistence that prior to the' adoption of our present constitution in 1851 this court had held consistently that benefits must be considered in determining the amount of damages for a taking of land for public use. This holding rested upon the "just compensation" clause of the 1816 Constitution and was required by express statutory enactments. *M'Intire* v. *State* (1840), 5 Blackf. 384. But there was no decision by this court prior to the adoption of the present constitution which held that the general assembly could not regulate the consideration of benefits. The constitutional convention of 1851 voted down a proposal to exclude "intrinsic benefits"; but the discussions do not indicate that the members of the convention understood that they were taking away from the legislature the power to limit or eliminate entirely the setting off of benefits.[2]

---

[2] The most heated controversy centered around the proposal to require that "just compensation" be assessed and "tendered, together with the expenses of the proceeding" before any man's property should be taken by law. This proposal was adopted in substance (the State being excepted therefrom). In respect to this provision Mr. Nave (Hendricks) voiced the apprehension of many members: "If we adopt this branch of the section, Mr. President, it will virtually put a stop to the progress of internal improvements in this State. It will be the same as to say that no

The speeches of various delegates indicate a sharp difference of opinion on the question of allowing benefits. Those who favored inclusion of benefits believed that

public improvement shall hereafter be made in the State of Indiana." Debates in the Constitutional Convention, Vol. I, p. 367.

The following excerpts from the remarks of members of the Convention suggest an absence of any intention to state a rule of damages:

"Would it not be better to let the Legislature prescribe the manner of assessing his damages, and the time when the same shall be paid—leaving *the whole matter open,* just as the old Constitution has left it?" Kilgore—Debates in Indiana Constitutional Convention, Vol. I, p. 364.

"The principle of the amendment of the gentleman from Laporte (Mr. Niles), and it is a good one, is, simply, that no man's property shall be taken without compensation. But some gentlemen say this is not enough; that we should go farther, and provide that in assessing the damages, the jury shall not take into consideration any benefits which may be conferred upon the adjoining property of the owner. Why, Sir, we are to declare general principles, not to provide for particular interests." Stevenson—Debates, etc., p. 401.

"I do not wish to impose restrictions upon the State—upon the people—by tying up the hands of its Legislature. Stevenson—p. 402.

"In conclusion, Mr. Chairman, I am opposed to the original section of the report and to all propositions and amendments providing that before private property can be taken for public use, a jury of freeholders must be empanneled, the damages assessed without regard to the benefits conferred by a work of public improvement upon other property of the owner, and the amount tendered in money. This is too much like legislation; it is, in my humble opinion, beyond the legitimate province of action of this convention. I am in favor of adopting a section upon this subject that shall simply declare that no man's property shall be taken without just compensation. That is sufficient. Watts—Debates, etc., p. 403.

"Next comes the amendment of the gentleman from Franklin (Mr. Berry) which embodies the principle first suggested by the gentleman from Jefferson (Mr. Bright) and which the Convention, the other day, under another form, came within two votes of adopting, that when private property is taken for public use, the damages of the owner shall be assessed *without any reference* to the benefits conferred. And lastly we have the substitute for that original section submitted by myself, and drawn with slight verbal alterations, from the old Constitution. It merely provides that *no man's property shall be taken without just compensation being made therefor;* thus leaving the whole matter upon the broad platform of simple justice, and untrammeled by legislative provisions. (i. e., legislative provisions in the Constitution) Niles—Debates, etc., p. 407.

"And if we provide that it (property) shall not be taken without *just compensation,* why need we fear to trust the manner of securing that justice to the Legislature, the juries, and the courts?" Niles—Debates, etc., p. 409.

the general assembly and courts had given the proper effect to "just compensation" under the old constitution and were opposed to changing the rule by constitutional provision. But, as already suggested, they did not understand that the inclusion of the general term "just compensation" would preclude the legislature from providing that damages be determined "without any reference to benefits conferred." Indeed; the excerpts from convention speeches, which we have quoted in the footnotes, indicate that many delegates believed that the question was one for the legislature. This was evidently the view of the general assembly of 1852 when it passed an act providing that "no deduction should be made for any benefit that may be supposed to result to the owner in estimating damages." (2 R. S. 1852, p. 193, §711.)

We consider the just compensation clause to be primarily a restriction on the power of the legislature for the protection of private property. It is not a specific rule to measure the amount of damages, and we believe there is a margin of discretion for courts and legislatures in determining what specific rules should be adopted to insure just compensation. In view of the obvious margin of uncertainty inherent in any effort to estimate money value of benefits we cannot say, as a matter of law, that the requirement of "just compensation" will not be attained more often by a rule excluding benefits than by a rule requiring benefits to be considered. On the other hand we could not say, as a matter of law, that a legislative rule requiring benefits to be considered would violate the "just compensation" clause. When constitutions have contained specific provisions for the benefit of property owners the courts have regularly held that the legislature cannot detract therefrom. (*Matter of New York* [1907], 190 N. Y. 350, 83 N. E. 299.) If we assume that "just compen-

sation," as used in the Constitution of Indiana, would not be violated by requiring that benefits be considered, then we have recognized in our decisions that the general assembly may prescribe a rule of damages more favorable to a property owner than is required by the constitution. Lewis, Eminent Domain, §696; *McMahon* v. *Cincinnati, etc., R. Co.* (1854), 5 Ind. 413; *Newcastle, etc., R. Co.* v. *Brumback* (1854), 5 Ind. 543; *Evansville, etc., R. R. Co.* v. *Stringer* (1858), 10 Ind. 551; *Evansville, etc., R. R. Co.* v. *Fitzpatrick* (1858), 10 Ind. 120; *White Water Valley R. R. Co.* v. *McClure* (1868), 29 Ind. 536; *Grand Rapids & Indiana R. R. Co.* v. *Horn* (1873), 41 Ind. 479; *Montmorency Gravel Road Co.* v. *Stockton* (1873), 43 Ind. 328; *Chicago, etc., Ry. Co.* v. *Wysor Land Co.* (1904), 163 Ind. 288, 69 N. E. 456. It cannot be any less a violation of the "just compensation" provision of the constitution to exclude benefits in the case of condemnation of a right of way for a railroad than to exclude them in case of condemnation for a state highway, and this court has held consistently, both under §711 of the Revised Statutes of 1852 and under §6 of the present Eminent Domain Act, *supra,* that benefits cannot be set off in a condemnation proceeding by a railroad corporation. *Cleveland, etc., R. Co.* v. *Smith* (1923), 192 Ind. 674, 138 N. E. 347; *Sisters of Providence* v. *Lower Vein Coal Co.* (1926), 198 Ind. 645, 154 N. E. 659, and cases above cited.

We conclude that §6 of the Eminent Domain Act, *supra,* excludes consideration of benefits in determining the amount of compensation to be paid for a "taking of land" for a state highway; and, also, that §6 so construed does not violate the just compensation provision of Art. I, §21 of the Indiana Constitution.

If benefits cannot be considered, it follows that the amount of damages cannot be measured by determining

and comparing the market values before and after the taking, since that would permit consideration of all benefits, general and special. The measure of damages may be stated to be the difference between the value of the whole tract before the taking and the value of the remainder, irrespective of any benefits conferred by the appropriation. Consequently it was not error for the trial court to exclude testimony which was offered for the purpose of showing the market value of the appellee's land before and after the appropriation.

Appellant insists that the trial court erred in allowing witnesses to testify as to the amount of damages suffered by appellees as a result of the appropriation. Appellant urges that this action of the court violates the rule that a witness cannot answer the exact question which the jury must answer. Appellant's contention has support as a general proposition in many decisions of this court; and these decisions assume the rule to be as follows:

> "It is a general rule that a witness cannot be allowed to express an opinion upon the exact question which the jury are required to decide." *Yost* v. *Conroy* (1884), 92 Ind. 464, 471.

While it is true that the usual function of a witness is to furnish "facts" from which the jury or court may draw inferences, there are many situations in which a witness is permitted to give in evidence his own inference or opinion. This inference or opinion carries a probative value apart from the facts upon which it rests. The courts have gradually drawn a distinction between "opinion testimony" which amounts to a mere guess and that which is in reality an inference from facts which are within the knowledge of a witness. The place of the expert's opinion is definitely fixed in the law of Evidence but the place of the

opinion of the non-expert is not so definitely recognized. The sound view has been stated convincingly by Justice Doe in *State* v. *Pike* (1870), 49 N. H. 399, 423:

"Opinions, like other testimony, are competent in the class of cases in which they are the best evidence, as when a mere description without opinion would generally convey a very imperfect idea of the force, meaning, and inherent evidence of the things described. Like other testimony, opinions are incompetent in the class of cases in which they are not the best evidence, as when they are founded on hearsay or on evidence from which the jury can form an opinion as well as the witness. A rule that opinions are not evidence must necessarily be in conflict with the rule which admits the best evidence. A constant observer of the trial of cases, examining the testimony for the purpose of ascertaining how many opinions are received and how many rejected, will find ten of the former as often as he finds one of the latter; and if he is very critical, he will find the ratio much greater than that. Opinions are constantly given. A case can hardly be tried without them. Their number is so vast and their use so habitual that they are not noticed as opinions distinguished from other evidence."

An excellent statement of the rule and the reasons therefor is found in *Eckman* v. *Funderburg* (1915), 183 Ind. 208, 211, 108 N. E. 577:

"The general rule is well settled that the opinions and conclusions of ordinary witnesses are not admissible in evidence, for the reason that the court or jury is quite as competent to draw conclusions from facts presented as are the witnesses themselves. But, as stated in Jones, Evidence (2d ed.) §360, 'It often happens that it is impossible for a witness to detail all the pertinent facts in such a manner as to enable the jury to form a conclusion without the opinion of the witness. Indeed, the witness may not be able to separate the facts and indications from which he has formed a conclusion from the conclusion itself.' In such cases the opin-

ion or conclusion of the witness is treated as in the nature of an ultimate fact and will be received in evidence on the ground that the primary facts leading to such opinion or conclusion cannot be so stated or described as to enable a person, not an eye-witness, to form an accurate judgment thereon."[3]

At present it is recognized that opinion testimony of non-experts is admissible for the purpose of proving value. This is not questioned when only the simple question of market value or of value in its ordinary form is involved. There is, however, conflict in the decisions when it is sought to establish the amount of damages directly by the opinion of a non-expert witness. Many decisions have pointed out the inconsistency in allowing a witness to testify to the value of land before and after the happening of the event which is supposed to have affected its value and

---

[3] The same idea was expressed by Owen, J., in *Railroad Co.* v. *Schulz*, 43 Ohio St. 270, 283, 1 N. E. 324:

"It must not be supposed that there is any rule of evidence concerning the opinions of witnesses which is peculiar to fences, highways, bridges, or steamboats, or to any other special subjects of investigation. Where the facts concerning their condition cannot be made palpable to the jurors so that their means of forming opinions are practically equal to those of the witnesses, opinions of such witnesses may be received, accompanied by such facts supporting them as they may be able to place intelligently before the jury."

The tendency seems to be to adopt the following test:

"The test usually applied in this State to determine the admissibility of opinion evidence is not to inquire whether the issue to which it relates is for the jury; nor whether it is a matter of daily occurrence and open to common observation; but, whether the witness' knowledge of the matter in question will probably aid the triers in their search for the truth." *Paquette* v. *Connecticut V. L. Co.* (1920), 79 N. H. 288, 109 Atl. 836.

See also *Nash* v. *Hunt* (1874), 116 Mass. 237, 245; *Alabama, etc., Iron Co.* v. *Cowden* (1911), 175 Ala. 108, 120, 56 South 984; *Barr* v. *Sumner* (1915), 183 Ind. 402, 107 N. E. 765; *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533, 535, 37 N. E. 343; *Carthage Turnpike Co.* v. *Andrews* (1885), 102 Ind. 138, 142, 52 Am. Rep. 653, 1 N. E. 364; *Coffman* v. *Reeves* (1878), 62 Ind. 334, 342; *Benson* v. *McFadden* (1875), 50 Ind. 431, 433; *Hardy* v. *Merrill* (1875), 56 N. H. 227, 22 Am. Rep. 441; *Horn* v. *State* (1903), 12 Wyo. 80, 148, 73 Pac. 705; Wigmore on Evidence, 2d Ed., Vol. IV, ch. LXV, §§1917-1929, ch. LXVI, §§1940-1945.

refusing to allow the witness to testify to the amount of damages caused to the land. We think opinion testimony respecting damages to property, like opinion testimony respecting value of property, is admissible on the ground "that the primary facts leading to such opinion or conclusion cannot be so stated or described as to enable a person, not an eye-witness, to form an accurate judgment thereon." (See *Eckman* v. *Funderburg, supra.*)

Further, we do not believe that allowing a witness to testify as to the amount of damages constitutes an invasion of the function of the jury, even though the witness does in a sense "express an opinion upon the exact question which the jury are required to decide." (*Yost* v. *Conroy, supra.*) The opinion of a non-expert as to the amount of damages, like the opinion of an expert, is not binding on the jury or the trial court; but is entitled only to whatever weight the jury sees fit to give it. We agree that the general rule is as stated in the quotation from *Yost* v. *Conroy, supra,* but there are many well recognized qualifications of that general rule; and we feel that opinion testimony respecting the amount of damages to property should be treated as a proper qualification. It is obviously a mere verbal distinction to permit a witness to testify as to the money value of the property before and after the taking occurs and to refuse to permit him to testify as to the pecuniary amount of the damages when, as in the instant case, all benefits are excluded from the consideration of the jury.

Judgment affirmed.