(Nos. 30318, 30319.— )

JOHN F. CUNEO, Appellant, *vs.* THE CITY OF CHICAGO, Appellee.

*Opinion filed September 24, 1948.*

CAMPBELL, CLITHERO & FISCHER, (CARLTON L. FISCHER, and JOHN F. ARNOLD, of counsel,) all of Chicago, for appellant.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, (JOHN J. MORTIMER, JOHN C. MELANIPHY, and FRANCIS S. LORENZ, of counsel,) all of Chicago, for appellee.

Per CURIAM: This is a suit at law to recover just compensation for damage to property under section 13 of

article II of the constitution of Illinois. The plaintiff, Cuneo, is the owner of property situated at the northeast corner of Michigan Avenue and Randolph Street in the city of Chicago and by his complaint alleges that his property was damaged by reason of the changes made in the grades of adjoining streets when the Illinois Central suburban railroad station and the approach for a new viaduct in Randolph Street in front of his property were constructed. The cause was tried in the superior court of Cook County before a jury in 1934 and a judgment was rendered upon the verdict of the jury in favor of the plaintiff in the sum of $214,345. This judgment was reversed by the Appellate Court on the ground that the trial court erred in excluding from evidence a release given by Cuneo to the Illinois Central Railroad Company. (297 Ill. App. 404.) The plaintiff sued out a writ of error from this court to review that action and we held that no constitutional question was involved. (372 Ill. 473.) On a second trial in 1945 a jury was waived and the cause submitted to the court. The trial court found the issues in favor of the defendant and entered judgment accordingly. Cuneo appealed to the Appellate Court where the judgment was affirmed and the cause is now before this court, we having granted leave to appeal from the Appellate Court.

The property involved consists of about 90 feet frontage on Michigan Avenue and about 70 feet frontage on Randolph Street and is improved with a five-story building about 60 years old covering the entire tract. Plaintiff purchased this land and building in 1925 for $1,076,000.

Before the improvement in question was made the grade of Michigan Avenue was about level and Beaubien Court which bounds this property on the east was 6 or 7 feet below this grade. A sidewalk on Randolph Street adjoining this property led slightly down grade to the east to a stairway of 4 or 5 steps which descended to Beaubien

Court. South of this sidewalk was an inclined roadway to Beaubien Court and there was also a passageway to the old Illinois Central suburban station. South of this passageway was the approach to the old Randolph Street viaduct. The property was then bounded on three sides by connected city streets and the first floor of the building was rented for sales and display purposes. The basement accommodated a display room and the upper floors were used for light manufacturing. Pedestrian traffic passed the first floor of the building both on Michigan Avenue and Randolph Street.

In October, 1930, a new Randolph Street viaduct and a new suburban station were begun. This work was done by the Illinois Central Railroad, pursuant to an ordinance of the city of Chicago, adopted December 15, 1930. This ordinance was designed to facilitate construction which had been previously authorized by an ordinance of the city of Chicago passed October 24, 1929, which ordinance amended an earlier basic ordinance adopted July 21, 1919, known as the Lake Front Development Ordinance. The new suburban station was opened for business in October, 1931. At this time the new viaduct had been completed from Michigan Avenue eastward for about 300 feet to the west line of property owned by the Michigan Central Railroad. A barricade was placed at this point and no further work was done on the viaduct until 1935 when work was resumed and the south half of the viaduct was completed and opened to traffic to the Outer Drive on October 7, 1937. The north half of the viaduct has never been completed and the Randolph Street sidewalk has not been extended easterly beyond the point where the work was ended in 1931.

As a result of this construction access to Beaubien Court from Michigan Avenue and from Randolph Street had been completely cut off. Likewise the street grade on Michigan Avenue had been altered and the street grade

of Randolph Street had been altered. As a part of the plan a large kiosk was erected in Michigan Avenue immediately in front of the plaintiff's building, which kiosk afforded an entry through the lower level of Randolph Street to the new suburban terminal of the Illinois Central Railroad. The grade of Randolph Street was altered to such an extent that its elevation from Michigan Avenue to the easterly edge of plaintiff's property was increased to approximately 6½ feet. This resulted in obscuring the plaintiff's show windows and the complete cutting off of access from Michigan Avenue to Beaubien Court for pedestrian and vehicular traffic. The grade of Michigan Avenue was likewise drastically altered.

The ordinance under which this construction was made provided that the Illinois Central Railroad Company indemnify the city of Chicago from any and all loss occasioned to adjacent property by reason of said construction. On February 10, 1931, after negotiations between the plaintiff and the railroad, the plaintiff gave the following release to the railroad:

"Know All Men By These Presents, that I, John F. Cuneo, of Chicago, Cook County, Illinois, being the owner of the following described property situated in said City, County and State, to-wit: [Legal Description] in consideration of the sum of $4800.00 to me in hand paid by the Illinois Central Railroad Company, the receipt of which is hereby acknowledged, for myself, my heirs, executors, administrators, grantees, assignees, lessees and tenants, do hereby forever release and discharge the said Illinois Central Railroad Company of and from any and all claims, demands and causes of action, of whatsoever kind, nature or description, whether past, present or future, and whether permanent, continuing or otherwise, which may arise out of damages occasioned to the building on the premises above described, and the effects therein; and to the occupants of said building, by virtue of the construction of the East Randolph Street viaduct now being carried on adjacent to said property by said Illinois Central Railroad Company.

"This release is and shall be a covenant running with the lands hereinabove described and is and shall be binding on all future owners thereof and on all persons who may now have or who

may hereafter acquire any interest therein, or to any part thereof, or who may be in possession of or occupy the same, or any part thereof; hereby binding not only myself but my heirs, executors, administrators, legal representatives, grantees, assignees and lessees, the same as if each and all of them had signed this release.

"And I do hereby agree that I will indemnify and save harmless the said Illinois Central Railroad Company of and from any claims, demands and causes of action which may be made against it by any of the tenants or occupants of said building, arising out of any damage which may be done to the said building, or the occupancy thereof, by virtue of the aforesaid work and improvements.

"It is understood that the question of providing access between that part of the station of the Illinois Central Railroad Company on Randolph Street and the building on said premises is left open for future consideration and is not affected by this release.

"In Witness Whereof I have hereunto subscribed my name and affixed my seal at Chicago, Illinois, this 10th day of February, A.D. 1931.

JOHN F. CUNEO (Seal)"

When the cause was first tried before a jury this release was excluded from the evidence and the Appellate Court held that the refusal to receive the release in evidence was reversible error. In the subsequent retrial without a jury the release was admitted in evidence but the trial court excluded testimony offered by the plaintiff showing the circumstances surrounding its execution. The plaintiff offered to show that the $4800 consideration actually was merely the amount of money paid by plaintiff for necessary shoring to his building to protect the same from the construction of caissons in Randolph Street. He argued that the release was ambiguous and needed parol evidence to aid the court in its construction. In the second appeal the Appellate Court held that parol evidence was inadmissible because the release was unambiguous. That court likewise held that the release was not a general release, but it merely covered damage to the physical building, the effects therein and the occupants, and that the release did not cover damage to the land upon which the building was situated. The plaintiff has urged in this court that the action of the trial

court and the Appellate Court in refusing to admit and consider evidence of the circumstances surrounding the execution of the release is reversible error. The argument centers around the fact that the shoring work was completed prior to the giving of the release in February, 1931, and that no changes in street grades were commenced until September, 1931, more than six months later. He argues that the words in the release, "by virtue of the construction of the East Randolph Street viaduct now being carried on adjacent to said property by said Illinois Central Railroad Company" limit the effect of the release only to the actual work being performed in sinking the caissons in Randolph Street preparatory to the construction of the suburban station and the viaduct, and that said release could not affect his right to damages arising out of a change in the grades of the streets.

We have carefully considered the cases cited by the plaintiff together with the release and the evidence offered regarding the circumstances surrounding the execution of the release. We conclude that the release is unambiguous and that at the time said release was executed it was the intention of the parties to release said railroad company from any and all claims for damage to the building, the occupants thereof or the occupancy thereof. We do not believe that it was necessary for the court to admit parol evidence with reference to the execution thereof and even considering the evidence offered by the plaintiff with reference to the execution thereof in its most favorable light, we cannot see how such evidence even if admissible could in any way vary or nullify the effect of the release, since nowhere is it contended that said improvement was not made pursuant to and in conformity with an ordinance of the city of Chicago in force at the time of the release of which the plaintiff could or should have had knowledge.

Having determined that the plaintiff's claim to damages is limited solely to damages to the land as land, we next

consider the question as to the proper measure of said damage. Plaintiff's damages are limited to the difference in the fair cash market value of plaintiff's property before and after the improvement. (*Kane* v. *City of Chicago,* 392 Ill. 172.) The plaintiff contends that the improvement was completed in October, 1931, when the suburban station was open for business. The defendant contends that the date of completion was October 7, 1937, when the viaduct had been connected with the Outer Drive and was open to traffic. The trial court and the Appellate Court determined that the improvement was completed for purposes of determining plaintiff's damages on October 7, 1937, the date the viaduct was open for vehicular traffic. The date of completion becomes material because the rule adopted in *Kane* v. *City of Chicago,* 392 Ill. 172, is that where property is damaged the measure of the same is the difference in the fair market value as a whole before and after the improvements, and benefits may always be set off against damages.

There is considerable merit to the contention made by both parties with reference to this question. It could be urged that the improvement has not even been completed as of the date of this appeal because said viaduct and suburban station were built pursuant to a plan of improvement known as the Harbor and Lake Front Development, originally contemplated by the 1919 ordinance and subsequently modified by the ordinance of 1929. This plan covered the entire lake front, involves an expenditure of hundreds of millions of dollars, and it has been in progress for nearly 30 years and is still far from completion. Under the 1929 ordinance certain improvements in the immediate vicinity of plaintiff's property were contemplated along with this viaduct and suburban station, which improvements have never been completed. A careful review of this entire record and of the ordinances leads us to the conclusion that the trial court and the Appellate Court

properly determined that this improvement was completed in October, 1937. We believe that the contention of plaintiff that said improvement was completed in October, 1931, when the suburban station was open to the public is not tenable for the reason that said station formed only a portion of the improvement contemplated. We believe that it would be unfair to the city of Chicago to hold that said improvement was completed at that time because it is apparent that when the construction of said viaduct was commenced it was the intention of the railroad and of the city that the entire viaduct should be completed as soon as possible, but, due to economic conditions and the shortage of funds over which no one had control, only the suburban terminal was completed and the balance of the viaduct remained uncompleted until 1937. We believe that the date of completion in 1937 is a reasonable and fair date for both parties. We believe that it would be unfair to say that the improvement has not been completed even as of now and we believe it to be equally unfair to say that the improvement was completed in 1931. We conclude that when the Outer Drive bridge and the roadway thereto were opened to traffic in 1937, so as to permit a somewhat normal flow of traffic past plaintiff's premises, said improvement was completed.

Having concluded that the date of completion of the improvement as established by the trial court and affirmed by the Appellate Court is proper, we next pass to the question of damages. It appears that the first floor and basement of this building produced rents of $46,000 in 1928, $57,000 in 1929, $45,300 in 1931 and $16,600 in 1932. From 1932 until 1939 the first floor was vacant. The rental income exclusive of advertising signs dropped from more than $70,000 per year in 1930 to about $24,000 in 1934. All parties agree that the advertising value of the property did not suffer from the improvement.

The testimony as to the value of the premises was produced almost entirely by experts called by both parties. The plaintiff's experts fixed the value of the land at approximately $1,250,000 exclusive of the building before the improvement. Their opinion of the value of the same after the improvement ranged from $860,000 to $945,000 and in their consideration of the value they did not consider the depression a factor. They likewise saw no appreciable effect of the depression on the value of the building in 1931. They ascribed the reduced value principally to damage to the first floor. The defendant's experts valued the property at approximately $850,000 to $935,000 before the improvement, and after October 7, 1937, they valued the property at from $585,000 to $675,000. They state that the reduced value resulted not from the change in grade of the streets and the construction of the viaduct but from the depression. They state that had the improvement not been made the plaintiff's property would have dropped in value because of the depression to about $450,000, and they say that the changes in grade at the first-floor level have no effect on the rentability of the first floor. There is no doubt in our minds that some of the loss of earnings of the first floor during the seven years was due to the obstruction by the kiosk in the Michigan Avenue sidewalk and the change in grade of the streets. However, we likewise feel from our review of the record that there were substantial benefits to the land by reason of the improvement, and we believe that the decision of the trial court, that any damages sustained to the land were more than offset by reason of the benefits derived from the improvements, is not contrary to the manifest weight of the evidence. When property is not taken, benefits may always be offset against damages to the property. (*Osgood* v. *City of Chicago,* 154 Ill. 194, *Kane* v. *City of Chicago,* 392 Ill. 172.) Even if buildings are completely destroyed, if the value

of the land is increased to an amount exceeding the value of the buildings, it cannot be said that the property has been damaged. *Osgood* v. *City of Chicago,* 154 Ill. 194.

'We believe that the plaintiff's contention that evidence as to value of the property in 1938 and subsequent thereto should have been excluded is without merit because that was a matter within the discretion of the court, (*McCoy* v. *Union Elevated Railroad Co.* 271 Ill. 490,) and the court did not abuse its discretion. We believe that the trial court did give weight and effect to the evidence of damage caused by the erection of the kiosk in Michigan Avenue, and we believe that the trial court did not misapprehend the effect of cutting off access to Beaubien Court. We find in the record little evidence offered by the plaintiff showing the use of Beaubien Court prior to the improvement which would show any damage to the plaintiff by reason of cutting off access from Beaubien Court to Michigan Avenue.

The plaintiff has also contended that the testimony of the defendant's witnesses was not competent on the ground that their opinions were based on improper elements of benefit. He further contends that much of the benefits to his property were caused by his own activity in transforming the basement area by investing money in improvement thereof and renting space from the Illinois Central in order to improve access to his premises. We have carefully considered the testimony produced by the experts for the defendant and we cannot see any errors in the court's rulings thereon which would materially affect the outcome of this matter. We believe that the increased vehicular traffic, increased advertising value and increased accessibility were proper considerations bearing upon the question of damage and benefit to plaintiff's property, and we believe that there was sufficient competent evidence tending to prove each of these elements.

In a case of this magnitude it is particularly difficult to have a record free from any error. It would serve no

useful purpose to discuss piecemeal the testimony of the experts produced by both parties, since we have carefully considered the entire record and conclude that the action by the trial court in finding the issues for the defendant was not contrary to the manifest weight of the competent evidence, and we further conclude that the errors in the admission of testimony did not materially affect the outcome of the cause and were not reversible errors.

For the reasons stated in this opinion, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*