STATE OF DELAWARE, et al., v. BOTLUCK, et al.
(Consolidated Turnpike Cases)

(*April* 13, 1964.)

TERRY, Chief Justice, and WOLCOTT, Justice, and WRIGHT, Judge, sitting.

*Daniel L. Herrmann* (of the firm · of Herrmann, Bayard, Brill and Russell) for the plaintiffs.

*William Poole* and *Charles S. Crompton, Jr.* (of the firm of Berl, Potter and Anderson), and *John Van Brunt, Jr.* (of the firm of Killoran and Van Brunt), and *Frank J. Miller* and *Frank O'Donnell* for the defendants.

Supreme Court of the State of Delaware, No. 90, 1963.

TERRY, Chief Justice.

During 1962, the state, upon the relation of the State Highway Department, instituted condemnation suits to acquire property for construction of highways between the Delaware Memorial Bridge and the Delaware-Maryland state line. Pursuant to the order of the Superior Court, twenty-three of these condemnation cases were consolidated for separate trial of certain questions common to each of these cases. During the hearings in the court below, the court was of the opinion that the answer by this court to certain limited questions would materially assist in the orderly disposition of the matters then pending before the lower court. Accordingly, the following questions were certified to this court:

"(1) Does the omission from the 1951 Condemnation Statute (48 Del. Laws, Ch. 271) and from the 1953

*Delaware Code* (10 *Del. C.* Ch. 61) of the set-off-of-benefits Statute (formerly a part of Section 5730 of the 1935 *Delaware Code*) eliminate from consideration, in a condemnation case brought under 10 *Delaware Code,* Chapter 61, the enhanced value rule enunciated by the Supreme Court of the United States in the case of *United States v. Miller,* 317 U.S. 369 [63 S.Ct. 276, 87 L.Ed. 336] (1942)?

"(2) Does the word 'compensation', as used in Art. 1, Sec. 8 of the Delaware Constitution [*Del. C.*] or the term 'just compensation', as used in 10 *Del. C.* Ch. 61, include the concept of set-off-of-benefits, notwithstanding the absence of a specific set-off-of-benefits Statute in Delaware?"

Addressing ourselves to the first question, we believe an explanation of the enhanced value rule as announced by the Supreme Court of the United States in *United States v. Miller,* 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943) is a prerequisite to an understanding of the question raised. In Miller, the Supreme Court of the United States held that a land owner should not be compensated for any increase in valve to the land taken due solely to the impact upon land values generated by the public project resulting from the taking or for the increase in value of land due to the probability or certainty that an existing public project would be expanded to include additional land subject to condemnation. The rationale of such holding was predicated upon the assumption that the condemning authority should not be required to pay additional compensation which is solely attributable to its own past or future activities.

The question presented in the initial question is whether or not such rule may be applied in this jurisdiction in the absence of a statute requiring that benefits to the remaining portion of a land owner's property occa-

sioned by the taking should be set off against the value
of the land taken or the damages to the remaining proper-
ty. Under Section 5730 of the 1935 Code, which governed
the exercise of the power of eminent domain by the State
Highway Department, the jury commissioners were di-
rected to set off the benefits or advantages accruing to
the land owner from the taking from the damages found
by the jury.

In 1951, the legislature enacted a comprehen-
sive condemnation statute, which contained the provision
repealing "[a]ll statutes and parts of statutes inconsistent
with this Act or any part hereof." In reliance upon this
provision, the Code Commission, in compiling the 1953
Code, omitted Section 5730 from the statute granting the
power of eminent domain to the State Highway Depart-
ment. Although plaintiff contends that this omission was
a misinterpretation of legislative intent, both parties agree
that the action of the Code Commission in deleting the
provision effectively removed Section 5730 from the exist-
ing body of statutory law. See 1 *Del. C.* Sec. 103, and
*Monacelli v. Grimes,* 9 Terry 122, 99 A. 2d 255 (1953).
Accordingly, we must now determine whether or not the
enhanced value rule, as stated in *Miller v. United States,*
cited supra, may be judicially applied in this state in the
absence of a legislative requirement that benefits be set
off.

Defendant's contention that the Miller rule is depend-
ent upon the existence of a statutory requirement that
benefits be set off is predicated upon a footnote contained
in *Miller v. United States,* which cites 33 U.S.C.A. § 595.
This statute, which was relevant to the type of condemna-
tion found in Miller, required that special and direct bene-
fits to the remaining land of a land owner be set off against
compensation or damages. Therefore, defendants argue,

the Miller rule is predicated upon the existence of such a statutory requirement.

 We are of the opinion that the enhanced value rule is wholly independent of the set off of benefits rule and, therefore, that the enhanced value rule is not dependent upon the existence of a statute requiring set off of benefits against compensation awarded.

In the first place, the court, in Miller, was careful to distinguish the set off concept from the enhanced value rule and, in addition, was careful to note the independent power of the courts to fashion working rules to guarantee the payment of just compensation. The footnote in question is appended to the following language:

"Courts have had to adopt working rules in order to do substantial justice in eminent domain proceedings. * * * This has begotten subsidiary rules. If only a portion of a single tract is taken the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract. * * *, if the taking has in fact benefited the remainder the benefit may be set off against the value of the land taken." (317 U.S. at pages 375-376, 63 S.Ct. at page 281, 87 L.Ed. 336).

 Subsequent to the above cited language, the court announced and discussed the enhanced value rule. It is, therefore, clear that the court was not relying upon statute as the exclusive authority for applying the rules announced by the court. Rather, the statute was merely added to a general discussion of the independent power of the court to fashion working rules for the assessing of just compensation. Secondly, as the court itself notes, the set off rule, by definition, can apply only to partial takings. See also Orgel, On Valuation Under Eminent Domain (2nd

Ed. Sec. 7). In fact, 33 U.S.C.A. § 595 is explicitly limited to partial takings. On the other hand, the enhanced value rule may be logically applied to both partial and total takings.

Thirdly, the two rules are concerned with entirely different facets of the valuation problem. The enhanced value rule is directed toward the appropriate manner of assessing value of land actually taken; the set off rule is concerned with what may be lawfully deducted from such value after it has been computed. Any doubts which may have been generated by the Miller decision were removed by the decision of the Supreme Court of the United States in *United States v. Cors.*, 337 U.S. 325, 69 S.Ct. 1086, 93 L.Ed. 1392 (1949), in which the court clearly indicated that the enhanced value rule was merely another judicially adopted working rule to approximate the constitutional requirement of just compensation.

Defendants have devoted extensive argument to questioning the fairness of the Miller rule, but that question is not properly before us at this time. Accordingly, the first certified question is answered in the negative.

Addressing ourselves to the second question, we are aware that the decisions in other jurisdictions considering this problem cannot be reconciled. Formerly, the courts of other jurisdictions were somewhat evenly divided upon the question as to whether benefits could be properly set off from damages in the absence of a legislative requirement. See 145 A.L.R. 1 and 29 C.J.S. Eminent Domain, § 178. However, the present majority rule indicates, that, in the absence of a constitutional or legislative requirement affirmatively prohibiting set off, the courts may properly employ the set off rule as another tool to assure the payment of just compensation. See Nichols on Eminent Domain, Sec. 8.6206.

In reaching this conclusion, the courts have adopted one of two theories. Courts in some jurisdictions have found the set off rule inherent in the constitutional requirement of just compensation. See *Aaronson v. United States,* 65 App.D.C. 14, 79 F.2d 139 (1935) ; *Cuneo v. City of Chicago,* 400 Ill. 545, 81 N.E.2d 451 (1948) ; and *Cullum v. Van Buren County,* 223 Ark. 525, 267 S.W.2d 14 (1954). On the other hand, some jurisdictions have viewed the set off rule as merely a permissive device which may be employed by a legislature or a court in determining compensation. See *State v. Reid,* 204 Ind. 631, 185 N.E. 449, 86 A.L.R. 1442 (1933) and 18 Am.Jur., Eminent Domain, Sec. 299.

We are of the opinion that the decisions of this jurisdiction place Delaware in the former category. In *Whiteman's Ex'x v. Wilmington and S. R. Co.,* 2 Har. 514 (1839), the land owner attacked a provision in the charter of the condemning corporation which required that benefits be set off. In rejecting this contention, the court held that the set off requirement was included within the constitutional requirement of just compensation. The import of this holding was emphasized in an opinion of the Chancellor in *Huber v. Steel,* 14 Del.Ch. 302, 125 A. 673 (1924), wherein the court stated, after setting forth the set off statute:

"In thus laying down the rule by which the assessing freeholders should be guided, it therefore appears that the Legislature * * * in substance * * * expressed the precise meaning of the constitutional word 'compensation' * * *." (125 A. at page 674).

Therefore, at the time of enactment of the Condemnation Act of 1951, this established body of law was in existence, and the legislature is presumed to have en-

acted the legislation in question with knowledge of the existence and effect of such prior law. See *State for Use of Davis v. Adams,* 42 Del. 54, 27 A.2d 401 (Superior Court, 1942).

· Defendants, however, contend that the repeal of the statute is equivalent to a legislative command that benefits may not be considered. If such were the case, the court must respect such legislative mandate since the legislature may always require the payment of more than the "just compensation" guaranteed by the constitution. See 145 A.L.R. 17. In reaching their conclusion, defendants contend that the purpose of the 1951 Act was the development of a uniform and comprehensive condemnation law. Defendants note that prior to enactment of the 1951 law, the set off rule was required by statute to be applied in certain types of condemnation proceedings; affirmatively prohibited in others; and finally, the statutory law was silent upon the question of set off of benefits in other types of condemnation proceedings.

We are of the opinion that this argument proves too much. If the legislature had, in fact, desired to prohibit the set off of benefits as part of a uniform program of condemnation, it appears inconceivable that the policy could be accomplished by repealing provisions prohibiting the set off of benefits in other types of condemnations and by failing to legislate in those areas where no prior legislation had existed. Accepting the arguments of the defendants that repeal is converted into an affirmative command, we would be faced with the anomalous result that set off would be required in some condemnation proceedings where it would not have been required before. We are of the opinion that the repeal of the various statutes dealing with set off of benefits and the failure to enact any comprehensive legislation upon this subject effective-

ly removed statutory law from consideration in determining whether or not the set off rule should be applied.

 Defendants, however, contend that it would be inequitable to allow general benefits, accruing to all lands in the vicinity of the public improvement, to be set off against the value of the land taken or damages to the remaining tract. Such argument is irrelevant to the present question, since it is well settled in this jurisdiction that only special benefits may be so set off. See *Whiteman's Ex'x v. Wilmington and S. R. Co.*, cited supra; and 3 Nichols, On Eminent Domain, Sec. 8.6211(9).

 Accordingly, this court should apply the well-settled rule that set off of benefits is inherent in the constitutional requirement of compensation. As noted in *Whiteman's Ex'x v. Wilmington and S. R. Co.*, cited supra:

"It is not easy to perceive any other mode of arriving at a just compensation than by considering all the consequences of the act complained of; whether they enhance or mitigate the injury." (2 Har. at page 524.)

Accordingly, the second question is answered in the affirmative.