WILMINGTON HOUSING AUTHORITY, a public body corporate and politic, organized and existing under the laws of the State of Delaware, Plaintiff Below, Appellant, v. The Following PARCEL OF LAND, with the Buildings and Improvements thereon erected, Situate IN the CITY OF WILMINGTON, COUNTY OF NEW CASTLE and State of Delaware v. HERBERT M. AMES and LILLIAN J. AMES, his wife, Owners, Pack & Process, Inc., a corporation of the State of Delaware, et al., Lessees, Defendants Below, Appellees.

(*April* 4, 1966)

WOLCOTT, Chief Justice, CAREY, Justice, and SHORT, Vice Chancellor, sitting.

*Thomas Herlihy, Jr., Thomas Herlihy, III,* and *Morris Cohen,* for appellant.

*James M. Tunnell, Jr.,* of Morris, Nichols, Arsht & Tunnell, and *William D. Bailey, Jr.,* of Bayard, Brill, Russell & Handelman, for appellees.

Supreme Court of the State of Delaware, No. 63, 1965.

WOLCOTT, Chief Justice.

This is an appeal by the Wilmington Housing Authority from the final confirmation of an award by Commissioners sitting in the Superior

Court in condemnation proceedings. The award was for just compensation for the taking by the Authority of almost an entire city block with several substantial buildings thereon, the property of the individual defendant, Ames.

The Authority attacks the inclusion by the Commissioners in the award of the value of fixtures consisting of large and heavy pieces of machinery used by the defendant, Pack & Process, Inc., in its business of processing and packaging dry products.

Ames and his wife are presently the sole owners of Pack & Process, Inc., although originally they owned only 50% of that corporation. It operates under a lease with Ames expiring in 1968. The nature of the business of Pack & Process, Inc. is that of a contract packer. Such a packer is called on by manufacturers whose own packaging capacities are limited, to supply immediate packaging capacity. This means that the machinery of a contract packager must have the capacity to permit the packer to diversify his operation. Such a plant requires a flexibility ordinarily not available in the manufacturer's own plant.

Packaging machinery utilizes complicated mechanisms at high speeds which require many and delicate adjustments for proper operation. Many items of this type of machinery are exceedingly large and the moving of them may be accomplished only with great difficulty and expense. Furthermore, when such a machine is dismanteled and moved, the readjustment of its delicate mechanisms is fraught with difficulty and oftentimes is impossible to attain.

The Ames property, a former brewery, is being taken by the Authority for a row-housing project. This former brewery is admirably adapted for the packaging business of Ames, operated through his wholly-owned company, Pack & Process, Inc.

Ames first learned of the housing proposal in 1961 when its possibility first was made public. However, for a period of time — in fact, until just before the institution of this condemnation action — the

taking of the Ames property was never definitely decided upon by the Authority, at least publicly. On the contrary, throughout a period of about four years, whether or not the housing project would go forward was a matter of considerable doubt.

Throughout this period, because of constantly increasing demands upon his packaging facilities from manufacturers, Ames gradually increased his productive capacity through the acquisition and installation of additional machinery. This machinery was installed on the premises in question, rather than upon a new location, because of the inability of Ames to find out whether the property would be taken.

At the trial witnesses called by the defendants testified that, while any piece of machinery, no matter what its size, can be moved given the necessary manpower and money, nevertheless, it was impractical to move the machinery in question because it could not be reassembled readily to perform the task for which it is designed. All of this machinery is attached to the buildings, either by bolts or water lines, electric cables, air hoses, etc. Nevertheless, all of the attaching devices can be disconnected from the machines which, thereafter, could, with a maximum amount of effort, be moved to a new location.

These facts were testified to by expert witnesses called by both sides. The fundamental disagreement among these experts relates to the reassembling of the machines if they should be moved. Ames' witnesses testified that they could not be reassembled and adjusted in any reasonable period of time, if at all. The experts of the Authority minimized the difficulties of moving and reassembling.

This is the fundamental disagreement between these litigants; the Authority arguing that, since the machinery may be removed without damage to either itself or the freehold, the law requires that they be regarded as chattels and not as fixtures to the real estate.

This Court, in *Della Corporation v. Diamond,* 210 A.2d 847, had occasion to approve the principles governing the determination of whether or not a chattel had become a fixture laid down in *Warrington*

*v. Hignutt*, 3 Terry 274, 31 A.2d 480.

In that case the rule was laid down that a fixture is a chattel which, by reason of its annexation to the real estate, is regarded in law as a part of the real estate. In determining whether or not a chattel has been sufficiently annexed to the realty to become a fixture, the controlling test is the intention of the party making the annexation as disclosed by the surrounding circumstances. To determine this intention, various factors should be considered. Thus, the nature of the chattel, the mode of its annexation, the purpose or use for which the annexation has been made, and the relationship of the annexor to the property, are all to be considered and weighed in determining the question of intention.

No one factor is necessarily controlling. The Wilmington Housing Authority argues that since the machinery was removable, that necessarily determines the issue, but we think not. Removability alone, while significant, is not controlling, as to what the intention of the annexor was. The true test, we think, is whether or not the chattel was affixed to the realty for a temporary or a permanent purpose. *Watertown Steam Engine Co. v. Davis*, 5 Houst. 192; *Equitable Guarantee & Trust Co. v. Knowles*, 8 Del. Ch. 106, 67 A. 961; *Martindale v. Bowers Beach Corp.*, 13 Del. Ch. 288, 118 A.299.

The trial judge in his instructions to the Commissioners adequately, we think, told them how to determine whether a chattel had become a fixture or not. He, quite properly, instructed them that it was a matter of intention on the part of the annexor. He properly told them what factors they should consider in order to determine what, in fact, the annexor's intention was.

The evidence before the Commissioners, particularly the evidence offered by Ames, was sufficient to support their finding that Ames intended the installation of this machinery to be permanent. This finding meets the test laid down in this State as to whether or not a chattel has, in fact, become a fixture.

The Authority takes exception to this finding, apparently as a matter of law, or, in the alternative, that all of the facts require a finding that the installation was to be temporary only.

We have already referred to their argument based upon the removability of this machinery but we think it pushes the argument too far. While the machinery is removable, it is not to be removed easily and properly. We think that a person installing and intending to operate massive machinery of this kind in an adequate location probably intended at the time of installation that the installation would be permanent. This conclusion is simple common sense.

The Authority next argues that since the machinery was owned by the corporation, Pack & Process, Inc., which was only a tenant of the premises, that this fact precludes a finding of intention on the part of Pack & Process, Inc., to make a permanent installation since its occupancy of the premises was of a temporary nature under a lease.

This, however, is to ignore the fact that the lease held by Pack & Process, Inc., had a number of years to go. Furthermore it is, we think, reasonable to conclude that the lease between Ames and his wholly-owned corporation, Pack & Process, Inc., would have been renewed and extended from time to time, if necessary. The ownership by the landowner of the corporate tenant is of great significance in determining whether or not the intention at the time the machinery was installed was to make it permanent or temporary. We think the Commissioners were justified in finding that Ames intended to install permanently through his wholly-owned corporation this machinery, and that the machinery actually installed would have remained there permanently but for the taking by the Authority. Therefore, it follows that Ames, or Pack & Process, Inc., is entitled to be compensated for these fixtures taken by the condemning Authority.

The most the Housing Authority has demonstrated in this appeal is that there is a possibility of difference of opinion between reasonable men as to whether or not these items of machinery had

become fixtures. Conceding this fact, nevertheless the Commissioners found against the factual contention of the Housing Authority which finding is based upon competent and sufficient evidence. This Court will not disturb the factual finding of the Commissioners based upon proper evidence.

The Authority, however, argues that the judgment should be reversed and the cause remanded for a new trial by reason of certain allegedly improper remarks made by counsel for Ames in his summation to the Commissioners. The complained of remarks commenced with a recitation of the growth of Ames' packaging business and his leasing of portions of the premises to other concerns. As a result of the discussions concerning the possibility of an urban renewal project in this area, one tenant failed to renew its lease and another prospective tenant did not enter into a lease because of the uncertainty as to the duration of time the premises would be available. This particular series of remarks then culminated in the following quotation:

"However, the real pressure and difficulty here developed from the fact that they talked but they didn't take. That is the thing that I think maybe we could lose sight of in light of this case. There was talk and talk, but in taking, this suit was never even filed until January 13, 1965.

"If they had gone ahead and taken it in 1962, that would have been something else again, but what is a man, what is a businessman to do, what would you do, as business people, if you had a property and you didn't have it? You were neither fish nor fowl. Would you find yourself the capital to go out and buy another plant and, too, begin to move gradually from this site to some other site? And if you did that you might have a little problem about laying out the money for two plants.

"I don't know about that, but then suppose you did this and they didn't take? Suppose they come along and said, 'We have changed our minds.'

"The wisdom of this whole project is such, I think, that a person never could have been sure, until it was accomplished, that it would go through.

"You can see the debatable features of it which are not issues in this case which would make you wonder about the wisdom of the project, and suppose they didn't take."

We think the complained of remarks do not amount to such prejudicial error as to require the referral back of this cause for a new trial. Throughout the trial the Authority had complained that Ames, since knowing in 1961 of the possibility of the condemnation, had kept right on installing machinery in the premises as his business grew, and then sought compensation from the Authority for such machinery installed during the period of time when the taking of the property was imminent. Also, the Authority charged Ames with neglecting many aspects of maintenance.

Counsel for Ames contends that the remarks were made in explanation of the complaints of the Authority of Ames' conduct in this respect. He argues that it was not only proper but necessary for him to point out to the Commissioners the reason why these matters had been done. As to questioning the wisdom of the project, he says he did not do this with the intention of inflaming the Commissioners, but merely to emphasize the uncertainty of the fact that condemnation of the property would ever take place. His argument is that, in view of the uncertainty of the taking, which, in part at least, was caused by doubts as to the wisdom of the project, Ames could not permit his business to stagnate, but, on the contrary, was compelled by its requirements to permit it to expand. Indeed, the failure on his part to do so would have been an unwarranted reliance by him upon rumors and uncertainties. For his own protection, he was required to do precisely what he did do.

In any event, we think the remarks not objectionable to such an extent as to require the overturning of the award and the granting of a new trial.

■ Next, the Housing Authority complains of the following remarks of counsel:

"Therefore, you could do very grave injury to Mr. Ames if you were to make a mistake against him, and if you were to make a mistake against the Housing Authority under their theory of the facts, it would not be a very serious error."

In the context of the trial which had taken place before the Commissioners and the contentions of both sides concerning the nature of this machinery — that is, whether it was fixture or chattel — and in view of the many repetitious statements of the position of the Authority to the effect that the machinery could be removed and resold, we think it was permissible to argue the point before the Commissioners.

We do not regard these remarks as an invitation to load the award against the Authority and in favor of Ames. On the contrary, we think it permissible argument on the facts and an argument designed to point out to the Commissioners inferences which could be made to aid them in determing the facts.

Furthermore, the trial judge instructed the Commissioners that if they should determine that the machinery was in fact fixtures, then Ames was entitled to be awarded the reasonable value of them if they were in place. If, on the other hand, the Commissioners should find that the items were not fixtures, then they were instructed that they would remain on the property subject to the right of Ames to remove them but that, in that event, they could make no award either for the value of the machinery or for the cost of its removal.

This, we think, is what counsel's remarks were directed to. They were intended to point out that if the machinery was held to be not fixtures, the consequences to Ames might be expenses equal to the value of the machinery. As such, counsel was pointing out the consequences of a wrong decision. This, we think, was proper comment. While his remarks may not have been as precise upon this

point as may now in retrospect be considered desirable, they, nevertheless, were directed to that issue, and we think were not improper to a degree to require the granting of a new trial.

For the foregoing reasons, therefore, the judgment below is affirmed.