**DEL–TAN CORPORATION, Defendant Below, Appellant,**

v.

**WILMINGTON HOUSING AUTHORITY, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

July 28, 1970.

George Tyler Coulson and Paul P. Welsh, of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellant.

Thomas Herlihy, Jr., and Thomas Herlihy, III, Wilmington, for Wilmington Housing Authority.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice.

The present action was instituted by Wilmington Housing Authority to condemn certain property to further a slum clearance and redevelopment project. Del-Tan Corporation (hereinafter Del-Tan) occupied the premises condemned under a long-term lease and operated a tannery. In the court below, the owners of the realty and Wilmington Housing Authority stipulated as to the value of the land and buildings exclusive of machinery and equipment. Del-Tan claimed the right to be compensated for the taking of items of machinery and equipment used in its tanning business as fixtures to the realty.

Trial was held before the Superior Court and a condemnation commission of three. The commission determined that many of the machines and items for which Del-Tan claimed compensation were not fixtures. However, the commission did find that some of the machines and items of equipment were in fact fixtures and allowed compensation for them.

Following the award of the commission, Del-Tan moved to modify the award to make it conform to the evidence on the ground that under the evidence the disallowed items were fixtures for which Del-Tan was entitled to compensation. This motion was denied and an order was entered confirming the award of the commission. From this order, Del-Tan appeals.

For forty or fifty years prior to 1961, when Del-Tan commenced operation of the tannery on the premises, a tannery had existed on this site in Wilmington. Del-Tan commenced its tannery operation on the site and was in fact conducting the operation at the time the Housing Authority filed this condemnation action. There is no showing that Del-Tan had any intention other than to continue the tannery operation for an indefinite period of time.

This court, in Wilmington Housing Authority v. Parcel of Land, 219 A.2d 148 (Del.Supr.1966), had occasion to review the Delaware authorities and to lay down the rule governing the determination of whether or not machinery and items of equipment are fixtures. We held that a fixture is a chattel which, by reason of annexation to the real estate, is regarded in law as a part of the real estate. The determination of whether or not there has been sufficient annexation of the chattel to the real estate depends basically upon the intention of the party making the annexation as disclosed by the circumstances surrounding it.

In the cited case we stated that the following factors should be considered in making the determination of whether or not a chattel had in fact become a fixture. To be considered are the nature of the chattel, the mode of its annexation to the real estate, the purpose or use for which the annexation has been made, and the relation of the person annexing the chattel to the property. All of these factors are to be considered and weighed in determining the basic question of the intention of the annexor.

The mere fact that the chattel may be removed from the real estate by detaching whatever affixes it, while significant, is nevertheless not controlling. Since the basic question to be determined is the intention of the annexor, the true test is whether or not the chattel was affixed to the realty for a temporary or a permanent purpose.

The trial judge instructed the commissioners on the law in a proper manner. Relying upon Wilmington Housing Authority v. Parcel of Land, *supra*, he instructed the commissioners that the controlling test in determining whether or not

a chattel has become a fixture is the intention of the party making the annexation as disclosed by the surrounding circumstances. He also instructed them concerning the factors to be considered in order to determine the intention of the party making the annexation of the chattel to the real estate.

■ During the first day of the trial, one of the three commissioners was excused by the court from further attendance and by stipulation it was agreed that the case go forward with only two commissioners sitting. At the end of the third day of trial when the case was ready to be submitted to the commissioners, it appeared that one of the two remaining commissioners had an engagement in New Jersey at 8 o'clock in the morning of the following day, and expressed concern to the judge about his ability to meet this engagement. Following the final instructions of the judge to the two remaining commissioners, the following colloquy took place between one of the commissioners and the trial judge:

"MR. CLARK: Your Honor, do I understand that we are now supposed to sit down at five minutes to five and settle three days worth of conversation?

"THE COURT: Yes, sir, and if it happens—

"MR. CLARK: Before going home tonight?

"THE COURT: Well, I was trying to accommodate you for tomorrow morning, Mr. Clark. If it happens that you run into where you want dinner, we will make arrangements for you to have dinner, sir.

"MR. CLARK: That is not very good accommodation for tomorrow morning, sir.

"THE COURT: Well, I am sorry if it has upset you but we have schedules we have to make.

"MR. CLARK: We will go to work."

The commissioners left the courtroom at 4:55 p. m. to commence their deliberations, and returned at 6:30 p. m. In the course of that time, the two commissioners made a number of decisions as to whether or not certain items were fixtures or chattels.

We have reviewed the findings of the commissioners in this respect as shown by their answers to specific interrogatories submitted to them in which they were asked to decide with respect to some 89 separate items. We find certain basic inconsistencies in the commissioners' answers to the individual interrogatories. In some instances one or more items were declared to be fixtures and, similarly, other items of an almost exact nature were declared to be nonfixtures. For example, Item No. 22, an 8-inch diameter wide wood rotary dry mill with a 10 h.p. motor, was declared to be a fixture with a value placed upon it of $900. At the same time, Item No. 61, which was an 8-inch diameter wide wood rotary dry mill with a 15 h.p. motor, was declared not to be a fixture, and a value placed upon it of $1,750. There is no apparent reason for the difference in treatment of these two items unless the location of a particular machine, making removal easier, entered upon it. We have no way of knowing and, on its face, it seems to us the two findings with respect to these two items are patently inconsistent. Other instances of disparate treatment of similar items appear in the answers to the interrogatories, but we will not list them separately.

In any event, we think the answers given by the commissioners upon the specific interrogatories put to them are inconsistent and have no logical explanation which we have been able to find in the record. We think undoubtedly the haste with which the commissioners deliberated, and the pressure upon one of the commissioners to end the deliberations in order to keep his early morning commitment of the next day,

might well possibly have resulted in this apparent inconsistency in their findings.

We think, in view of the unexplained inconsistencies in the award of the commissioners, justice requires a new trial before a new commission as to all items in controversy at the time of such new trial.

We will accordingly reverse and remand the cause for a new trial before a new commission.