**DEL–TAN CORPORATION, Defendant Below, Appellant,**

v.

**WILMINGTON HOUSING AUTHORITY, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Sept. 21, 1972.

Reargument Denied Oct. 13, 1972.

George Tyler Coulson and Paul P. Welsh of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellant.

Thomas Herlihy, III, Wilmington, for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

This is an appeal from the denial of an award by a condemnation commission. The action was commenced in 1969 for the condemnation of a property which Del-Tan Corporation leased and operated therein a tannery. The landowners and the Wilmington Housing Authority stipulated to the value of the land and buildings, exclusive of the tannery machinery and equipment. Del-Tan asserted the right to compensation for the taking of items of machinery and equipment found to be fixtures to the real estate.

Trial was had before the Superior Court and a condemnation commission resulting in an award of $183,656.60. Del-Tan appealed to this Court asserting that the com-

mission erred in holding that certain of the items for which compensation was claimed were not fixtures. We affirmed the award of the commmission but remanded the cause for a new trial with respect to all items still in controversy at the time of the new trial. Our reasons for so doing appear in our Opinion, Del-Tan Corporation v. Wilmington Housing Authority, Del. Supr., 269 A.2d 209 (1970).

At the trial on the remand the condemnation commission found that none of the items still in controversy were fixtures. It consequently made no award. Del-Tan appeals for the second time.

First, Del-Tan asks us to hold that all of the items in controversy are fixtures, and either to fix the amount of the award which should have been made by the commission, or to remand with instructions to the Superior Court to perform that function.

The award of a condemnation commission is similar in nature to the verdict of a jury, and the findings of a commission, like those of a jury, will not be disturbed by this Court if there is competent evidence in the record to support them. See Del.C.Const., Art. IV, § 11(1)(a); 10 Del.C. § 6108; Wilmington Housing Authority v. Harris, Del.Super., 8 Terry (47 Del.) 469, 93 A.2d 518 (1953). Hence, we cannot substitute our own judgment on the facts in direct contravention to the findings of two condemnation commissions that the items in controversy are not in fact fixtures.

We might point out that in the first appeal the remand resulted because a cursory scanning of the photographs admitted in evidence gave some possible indication of arbitrary action on the part of the first commission in rejecting as fixtures some items of machinery which superficially, at least, seemed comparable to other items of machinery which had been found to be fixtures. This apparent discrepancy, we think, has been laid to rest by the findings of the second commission.

■ Next, Del-Tan argues that we should hold as a matter of law that the items in controversy are fixtures under the principle of estoppel by judgment. The argument is that, since it was determined at the first trial that Del-Tan had the intention of continuing the operation of the tannery at this location for an indefinite period, and that since most, if not all, of the items in controversy were affixed to the building in one way or another, and since the first commission held that 47.5% of the machinery on the premises were fixtures, the rule of Watertown Steam Engine Co. v. Davis, Del.Supr., 5 Houst. 192 (1877) requires the conclusion that all of the items in question are fixtures.

*Watertown* does contain language to the effect that "if any substantial part of the complete machinery necessary to carry on the business * * * [is] fastened in a permanent manner to the freehold, then all is to be considered as so attached * * *." Del-Tan argues that 47.5% of the machinery is a substantial part of the whole and that, accordingly, all, whether fast or loose, must be considered fixtures, and that the Housing Authority is accordingly estopped by the first judgment to maintain the contrary.

It may be that *Watertown* stands for the rule Del-Tan cites it for. If such be the case, however, this much of *Watertown* must be considered to have been impliedly overruled by our decision in Wilmington Housing Authority v. Ames, Del.Supr., 219 A.2d 148 (1970) which specifically approved the methods of determining whether or not specific items, allegedly fixtures, were in fact such.

■ Finally, Del-Tan argues that the Trial Judge committed error when he instructed the commission that it could consider the ease or difficulty with which the various items could be removed and made use of elsewhere, and when he refused to instruct the commission of this Court's ruling that Del-Tan intended to carry on the tannery operation indefinitely.

The question of ease of removability of the machinery was strenuously litigated at the first trial, but prior to the second trial Del-Tan conceded that all of the items in controversy could be removed from the premises without serious damage to the items themselves or to the freehold. We think this was a tactical move on the part of Del-Tan in an attempt to remove from the case the element of removability in determining whether or not the items were in fact fixtures, and to permit Del-Tan to request a charge to that effect, and to confine the inquiry of the commission to the question of whether the items, irrespective of removability, were required to carry on the tannery operation in the indefinite future.

The Trial Judge refused to so charge. He in fact instructed the commission in part as follows:

"The law has defined that a fixture is a chattel, that is a piece of personal property which, by reason of its annexation to the realty is regarded in law as a part of the real estate. In determining whether or not a chattel has been sufficiently annexed to the realty to become a fixture, the controlling test is the intention of the party making the annexation as disclosed by the surrounding circumstances. To determine this intention, various factors should be considered. No one factor is necessarily controlling, and I do not list the factors in any special order of importance. You may consider all or any number of the following factors in determining the intention of the party making annexation of the chattel:

"(1) The nature of the chattel.

"(2) The manner of its annexation.

"(3) The purpose or use for which the annexation has been made.

"(4) The relationship which the annexor, that is, the person making the annexation, has to the property.

"(5) The ease or difficulty with which the article may be removed and made use of elsewhere."

The charge as given was in precise accord with the instructions we approved in the *Ames* case, supra, and which we approved by way of dictum in the first appeal in this case. We see no reason to change our expressed view since the charge correctly sets forth the rules for the determining of whether or not a particular item is a fixture. If prior Delaware case law is deemed to be in conflict, it must be regarded as modified so as to conform.

The judgment below is affirmed.