Frank E. ACIERNO, Plaintiff,

v.

PREIT–RUBIN INC., Defendant.

Civ.A. No. 99–267 GMS.

United States District Court,
D. Delaware.

Feb. 13, 2001.

Charles M. Oberly, III, Karen V. Sullivan, Oberly & Jennings, P.A., Wilmington, DE, of counsel: John J. Yannacone, Yannacone & Baldo, Media, PA, for Plaintiff.

Richard H. Morse, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, for Defendant.

### *MEMORANDUM OPINION*

SLEET, District Judge.

## I. INTRODUCTION

The plaintiff, Frank E. Acierno ("Acierno") owns a parcel of land near the Christiana Mall in New Castle County, Delaware. The defendant, Preit–Rubin, a Pennsylvania corporation and a Real Estate Investment Trust (REIT), assisted in the development of land adjacent to Acierno's property. In April of 1999, Acierno filed this action against Preit–Rubin for intentional interference with prospective economic advantage and conversion in connection with Preit–Rubin's role in the development of the adjacent property. Specifically, Acierno alleges that Preit–Rubin misled New Castle County into approving a land development plan for the adjoining property. Acierno alleges that Preit–Rubin misled the County by not designating his property as a committed property in a traffic impact study. Acierno contends that if his property had been considered in the study, it is likely that the development plan would have been rejected. For these alleged wrongs, Acierno seeks both injunctive and monetary relief.

Presently before the court is Preit–Rubin's motion for summary judgment. The court will grant the defendant's motion because Acierno has failed to join New Castle County, a necessary and indispensable party, and because he has failed to adduce sufficient evidence to establish his claims for intentional interference with prospective economic advantage and conversion.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not

any genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Omnipoint Communications Enterprises, L.P. v. Newtown Township,* 219 F.3d 240, 242 (3d Cir.2000). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Omnipoint,* 219 F.3d at 242 (quoting *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The court must grant summary judgment if the party responding to the motion fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Id.* (internal quotation omitted). In considering a motion for summary judgment, the court must draw all inferences and resolve all doubts in favor of the non-moving party. *See Herr v. Pequa Township,* No. 99–Cv1992000, 2000 WL 1100848, at *2 (E.D.Pa. July 31, 2000).

With these standards in mind, the court will briefly describe the facts that led to this action.

## III. FACTS

### A. Description of the Land in Question

From the early 1970s until 1995 Acierno and Albert Marta ("Marta") owned property adjacent to the Christiana Mall in New Castle County, Delaware as tenants in common ("Marta–Acierno property"). On November 23, 1982, Acierno and Marta entered into a Declaration of Restrictions ("Declaration"). The purpose of the Declaration was to impose restrictions on the use of the property including and requiring phasing of development to coincide with improvements to the transportation system. The Declaration also expressly committed Acierno and Marta to donate a portion of the land for the State's anticipated realignment of Route 7 (now Route 1).

Along with construction of then Route 7, the State built an interchange next to the Christiana Mall. This interchange was built on a portion of the Marta–Acierno property that had not been donated, and thus, the State condemned this portion of the Marta–Acierno property. The parties pursued a condemnation case in State court. Because Marta settled with the State prior to trial, the Supreme Court opinion in the case only addressed Acierno's interest in the property. *See Acierno v. State,* 643 A.2d 1328 (Del. 1994). At trial, a representative of the state highway department testified that "[t]he State is *committed* to the future improvements necessary for the full development of the Acierno property." *Id.* at 1334 (emphasis added). The court held that the State was "legally bound by its representations." *Id.*

The designation of Acierno's property as committed is significant because the State was now obligated to consider Acierno's property in assessing the feasibility of any development in the area.[1]

In 1995, the Marta–Acierno property was partitioned. *See In re Real Estate of Albert H. Marta and Frank E. Acierno,* No. 6763, 1995 WL 130758, 1995 Del. Ch. LEXIS 35 (Del. Ch. Mar. 16, 1995), *aff'd,* 672 A.2d 984 (1996). Some time after the property was partitioned, Marta proceeded to develop his land through Alro Associate, L.P. ("Alro"), a Delaware limited partnership in which Marta was a partner. In order to develop the land, Alro began to seek the approval of the New Castle County Council ("County"). On September 23, 1997, the County approved the Record Major Development Plan ("Plan") for Marta's property (hereinafter "Christiana, Phase I"). Although Alro initially represented Christiana, Phase I in the approval process, the defendant, Preit–Rubin assumed the responsibility of representing Christiana, Phase I by the time of the 1997 approval.[2]

---

1. Acierno has adduced evidence that demonstrates that the State acknowledged that it was bound by its representations made in *Acierno v. State.* For example, in 1994 in connection with the proposed development of a Walmart, the Delaware Department of Transportation ("Del-DOT") advised against the proposal because "[a]s [they] understood the Court's ruling in the matter, the State is obligated to provide capacity to accommodate...." Plaintiff has also provided evidence showing that New Castle County also recognized the Acierno property as a committed development in connection with a 1996 study.

2. It is not clear exactly when Preit–Rubin took over the representation of Christiana, Phase I in the approval process.

## B. County Approval Process

The approval process for record major land development plans generally involves a cycle of submissions of applications and information by a developer, rejection by County officials, discussions between County officials and the developer, modification of submissions and approval by the County. The defendant contends that the approval process for Christiana, Phase I was consistent with this pattern.[3]

Relevant to the motion before the court, a factor considered by the New Castle County Planning Department ("County")[4] in deciding whether to approve a development project would be the traffic impact of the proposed project. In order to discern traffic impact, the County typically requires the developer to prepare a traffic impact study ("TIS") to be submitted to the Delaware Department of Transportation ("DelDOT") for review. After DelDOT evaluates the TIS, the County will review the evaluation and either approve or disapprove the study. The parties do not dispute that a TIS would need to consider the impact of increased traffic on "committed," but unconstructed development projects in the area of proposed development.[5]

In this case, Acierno contends that Preit–Rubin misled the County by failing to designate his property as committed and conse-quently, failing to consider the Acierno property in its TIS. The parties dispute the exact order and nature of the events leading up to the approval of Christiana, Phase I. With the summary judgment standards in mind, the court describes the approval process for Christiana, Phase I in a light most favorable to Acierno, the non-moving party.

At the outset of the development of Christiana, Phase I, Alro argued to the County that under an exception to applicable law,[6] it should not be required to submit a TIS because a traffic study had already been done when Marta and Acierno had applied for rezoning of their jointly held land. The County rejected this argument and required that Alro submit a TIS in order to develop Christiana, Phase I. Thus, it appears to be undisputed that the developers of Christiana, Phase I knew that the Acierno property was to be treated as a "committed property."[7]

It also appears to be undisputed that the developers of Christiana, Phase I consistently included the Acierno property in determining traffic capacity up until March of 1996, when it submitted a TIS that included the Acierno property. The County rejected the March 1996 TIS because it showed unacceptable levels of service (traffic impact).

By August of 1996, however, the County reversed its earlier position. In a memoran-

---

3. The plaintiff does not dispute this characterization of the approval process.

4. The court will refer to New Castle County, the New Castle County Council and the New Castle County Planning Department interchangeably as the "County" for the purposes of discussing the motion before the court.

5. To establish that his property would be a committed property under applicable law, the plaintiff cites to the Uniform Development Code at Section 11.130(A)(7). This section reads in relevant part:

> Future traffic shall be projected by the inclusion of trip generation from projects with recorded plans, projects with preliminary plan approval, projects having had a zoning change approved within a three (3) year period, and *projects containing deed restrictions requiring phasing to coincide with improvements to the transportation system....* U.D.C. § 11.130(A)(7) (emphasis added).

Thus, under Section 11.130(A)(7), Acierno's property would be a committed property because pursuant to the Declaration it contains deed re-strictions requiring phasing to coincide with transportation improvements.

6. Preit–Rubin identifies this exception as Section 32–94(c)(2) of the New Castle County Code which reads in relevant part:

> [i]f a traffic impact study was completed for a proposed change in the zoning classification of the subject parcel and [t]he parcel is subject to deed restrictions requiring that the proposed subdivision or land development be phased to coincide with improvements to the transportation system or phased by way of rate of build out, provided that the waiver shall only be effective for the period of time set forth in the deed restrictions for the phasing. New Castle County Code § 32–94(c)(2).

7. Although Alro represented Christiana, Phase I at the time the County insisted that a traffic impact study be conducted, Preit–Rubin does not dispute that it was also aware of the committed status of the Acierno property.

dum dated August 28, 1996, John Janowski, of the New Castle County Planning Department, informed DelDOT that "[t]he Acierno property south of this site does not need to be included [in the TIS]." As a result of Janowski's memo, Christiana, Phase I developers prepared and submitted a TIS that did not consider the traffic impact of the Acierno property in November of 1996.

The central dispute in this case is the reason for the County's reversal of its earlier position regarding the Acierno property. In his summary judgment briefing, Acierno states that: "It appears that [Preit–Rubin's] representations led the County to believe that the Acierno property was not a committed development." Acierno further states that despite knowing that his property was a committed development, Preit–Rubin "did nothing to disabuse the County or DelDOT of the notion that [his] property did not need to be considered in the TIS."

In sharp contrast to Acierno, Preit–Rubin claims that it was the County's decision to omit the Acierno property from consideration in their TIS. Preit–Rubin further claims that the County Attorney's earlier decision to require a new TIS for the development of Christiana, Phase I equally applied to Acierno's property, just as it applied to the Marta property. Because the County decided that a new study would be necessary for the development of either property, the County decided that the Acierno property would be deprived of its committed status.[8]

Acierno has supplied no evidence which would demonstrate that Preit–Rubin actually misled the County. Instead, it supplies examples of the State's prior and subsequent recognition of the Acierno property as com-

mitted. Thus, Acierno implies that the State's contradictory position with regard to Christiana, Phase I must have resulted from Preit–Rubin's misleading information.

Finally, it cannot be disputed that the State knew that Christiana, Phase I's November 1996 TIS did not consider the Acierno property despite its committed status. Acierno himself had apprised the State of this fact in a letter written by his attorney dated August 7, 1997.[9] Thus, the County was aware of the issue currently before the court at least one month prior to the vote on Christiana, Phase I's Plan. Moreover, there is no evidence in the record that Acierno mounted a direct legal challenge to the County's approval of the Plan despite his allegations of wrongdoing in connection with that approval.

The court now turns to the substance of Preit–Rubin's motion to determine if it is entitled to judgment as a matter of law based on the foregoing facts.

## IV. DISCUSSION

In its Motion for Summary Judgment, Preit–Rubin argues that this case should be dismissed for several reasons.[10] First, Preit–Rubin contends that Acierno has failed to join an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. Preit–Rubin also argues that it is also entitled to summary judgment as a matter of law because the County *was* aware of the omission of Acierno's property as a committed development from the TIS, but approved the Plan anyway. The court will address these arguments in turn.

---

**8.** This is Preit–Rubin's characterization of the County's decision making process. The court concedes that it does not exactly understand this characterization. The court has no opinion, however, as to whether this would be a valid reason for the County to change it position because Acierno claims he is not challenging the County's decision to approve Christiana, Phase I. Thus, all that is relevant for the court's purposes is whether there is any evidence supporting the claim that Preit–Rubin somehow misled the County into changing its position.

**9.** Acierno's counsel also corresponded with the County on this issue in March & April of 1998.

**10.** Preit–Rubin also makes two other arguments in its summary judgment motion. First, it argues that Acierno's challenge is untimely under the applicable statute of limitations. Preit–Rubin also claims that Acierno is not entitled to injunctive relief because he waited until after over a year into construction to file a motion for injunctive relief, and thus, his claims would be barred by laches. The court will not address these arguments because it finds that Preit–Rubin is entitled to summary judgment based on other grounds.

## A. Joinder Analysis

Preit–Rubin argues that it is entitled to summary judgment because New Castle County is a necessary and indispensable party to this lawsuit. Preit–Rubin contends that this action is actually a collateral challenge to the County's approval of the Christiana, Phase I Plan. Thus, it claims, that complete relief cannot be granted in the County's absence and that the County has an interest in the validity of its land use decisions. Preit–Rubin further argues that because joinder of the County would destroy diversity jurisdiction, joinder would not be feasible, and thus, this suit must be dismissed.[11]

■ Whether a party is necessary and indispensable is a question of federal law. *See Five Star Parking v. Philadelphia Parking Authority,* Civ. A. No. 86–6102, 1987 WL 13268, at *3 (E.D.Pa. June 22, 1987) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 117–21, 125 n. 22, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)). Federal Rule of Civil Procedure 19 governs the joinder of non-parties to a lawsuit. *See* Fed.R.Civ.P. 19. Determining whether a party is necessary and indispensable is a two-step process. The first step in a Rule 19 analysis is to determine if the party in question should be joined if feasible. Fed.R.Civ.P. 19(a).[12] If so, the court shall order that the person be made a party. *Id.* Next, if joinder would not be feasible, the court must then "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b).[13]

### 1. Whether Joinder of the County is Necessary

■ Preit–Rubin argues that joinder of the County is necessary because Acierno's claims are in effect, a collateral challenge to the County's decision. Thus, it claims that complete relief cannot be granted in the County's absence and that judgment in this matter could impair the County's interests as a practical matter. In contrast, Acierno contends that the County is not a person within the meaning of Rule 19. And, that even if the County is a person under Rule 19, complete relief can be granted in the County's absence.

■ The court is not persuaded by Acierno's arguments. First, Acierno's contention that the County is not a person under Rule 19 is simply without merit.[14] "Joinder [of

11. The court notes that Preit–Rubin identifies several other parties that might also be necessary and indispensable. These parties include: Alro, Marta, the current owner of Christiana, Phase I, and the tenants of Christiana, Phase I (including Costco Wholesale Corp., Circuit City Stores, Inc., D.F. & R. Operating Co., and Sigwell Operating Co.). Alro, Marta and Christiana, Phase I and its current owners are all Delaware Citizens for diversity purposes. The court notes that because its subject matter jurisdiction over this matter is based on 28 U.S.C. § 1332, addition of these parties would destroy diversity jurisdiction. In light of the focus of the parties' submissions, however, the court will only discuss the County in its analysis.

12. Rule 19(a) states in pertinent part: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that person be made a party. Fed.R.Civ.P. 19(a).

13. Rule 19(b) reads: "If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed.R.Civ.P. 19(b).

14. The court notes that Acierno does not cite to a single case or treatise to support this contention.

cities and local governments] will be required when they will be affected by the action or adequate relief cannot be awarded in their absence." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1617 (2d ed.1986); *see also Troy Towers Tenants Ass'n v. Botti,* 94 F.R.D. 37, 38 (D.N.J.1981). Thus, it appears that the County could be a person under Rule 19.

The court also finds that under Rule 19(a) of the Federal Rules of Civil Procedure, joinder of the County is necessary for a just adjudication of this matter. First, complete relief cannot be granted in the County's absence. Despite Acierno's contention that the relief it seeks does not depend upon action by the County, the court finds that disposition of this case could ultimately turn on further action by the County.

In particular the injunctive relief sought by Acierno necessarily depends on the County's approval. Plaintiff seeks injunctive relief "directing that all construction to date be declared illegal." (D.I.1). This relief would have the effect of overruling the County's September 23, 1997 approval of Christiana, Phase I's development. Thus, because the court would have to review the County's actions in order to fashion a remedy, the County is a necessary and indispensable party. *See Estrada v. Sea–Land Service, Inc.,* 939 F.Supp. 129, 132 (D.P.R.1996) (citing *Navajo Tribe of Indians v. State of New Mexico,* 809 F.2d 1455, 1456 (10th Cir.1987); *McKenna v. Udall,* 418 F.2d 1171, 1174 (D.C.Cir.1969).[15]

Acierno's claims depend upon a belief that the County's decision was incorrect. Even if Acierno is suing Preit–Rubin for wrongs that flow from that decision, this case is in essence, a challenge to the County's approval

of the Christiana, Phase I Plan.[16] The District Court of Puerto Rico's decision in *Estrada v. Sea–Land Service, Inc* ("*Estrada*") provides insight on this issue. *See* 939 F.Supp. 129 (D.P.R.1996). In *Estrada,* the court faced a similar indirect challenge to a local entities decision. *Id.* In that case, the plaintiff sued private citizens under various torts theories. *See id.* at 130. These alleged wrongs arose in connection with the Puerto Rico Ports Authority's ("PRPA") decision to revoke the plaintiff's license. *See id.* Just as in this case, the plaintiff in *Estrada* did not join the local government entity involved. *See id.* at 131. The *Estrada* court found that the local government entity was a necessary party. *See id.* at 132. In particular, the *Estrada* court stated that the government entity had "an interest in ensuring that its determinations are subsequently enforced." *Id.* at 133. Thus, disposition in this action could also impair the County's interests as a practical matter.

■ Because the court finds that the County should be joined, the court must now determine if joinder is feasible. As a county located within the state of Delaware, New Castle County would be a citizen of Delaware for diversity purposes. *See Moor v. Alameda County,* 411 U.S. 693, 719, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *see also Brierly v. Pennsylvania Dep't of Transp.,* Civ. A. No. 92–4573, 1992 WL 372327 at *2 (E.D.Pa. Dec. 8, 1992); *NA–JA Constr. Corp. v. Roberts,* 259 F.Supp. 895, 897 (D.Del.1966). In this case, joinder of the County is not feasible because it would destroy subject matter jurisdiction.[17]

**2. Whether the County is indispensable**

■ Next, if the court determines that joinder is necessary, then the party must be

---

15. Acierno further argues that injunctive relief in this case could simply consist of ordering Preit–Rubin to submit a new traffic study. He also argues that the defendant has not shown that the County wouldn't consider this study. The first argument is also unpersuasive and the second argument is irrelevant. Even if the court ordered the defendant to resubmit a traffic study, the County does not have to consider the new study. Thus, the County would need to be a party so that the court's order could be carried out.

16. The court notes that "federal courts are reluctant to sit as appeal boards for disputes between land developers and a [local] planning body." *Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 122 (3d Cir.2000).

17. Subject matter jurisdiction in this matter is based on 28 U.S.C. § 1332.

joined if feasible. However, if joinder would raise problems of personal or subject matter jurisdiction, the court must then "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). *See Homeamerican Credit, Inc. v. Vermillion,* No. CIV. A. 97–2139,1997 WL 793047, at *2 (E.D.Pa. Dec. 10, 1997). "There is no prescribed formula for determining whether a person is an indispensable party and courts are given substantial discretion when making a determination under Rule 19." *Id.; see also Janney Montgomery Scott v. Shepard Niles,* 11 F.3d 399, 403 (3d Cir.1993).

The court must balance the four factors articulated in Rule 19(b) in order to determine if this action should be dismissed. Specifically these four factors are: 1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; 2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; 3) whether a judgment rendered in the person's absence will be adequate; and 4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. *See* Fed. R.Civ.P. 19(b).

Addressing the first and third factors, the court finds that a judgment in the absence of the County could be prejudicial to the county and may not be adequate. In this case, only the County can decide whether to accept a new traffic study and only the County can approve or disapprove development plans. First, a judgment in this case could be prejudicial to County and little can be practically done to reduce the possibility of prejudice. Second, a judgment in the County's absence would not constitute adequate relief since that relief necessarily depends on whether the County will allow further development in the area or accept a new TIS.

Addressing the second factor, Acierno argues that "a court may avoid prejudice to absent parties by shaping relief granted to the plaintiff, most commonly by awarding money damages in lieu of injunctive relief."

Rule 19(b) does explicitly call upon the court to shape relief so that a claim could go forward without an equitable party. *See* Fed.R.Civ.P. 19(b). In this case, however, even if the court dismissed Acierno's claims for injunctive relief, the court finds that the County is still an indispensable party. An award of money damages creates the possibility that Acierno may obtain a judgment for damages based upon a possibly erroneous assumption that his ability to develop his property has been affected.

Finally, in looking to the fourth factor, Acierno also argues that he may not have an adequate remedy because so much time has passed since the County approved Christiana, Phase I's Plan. As the defendant points out, any delay in this case is chargeable to Acierno. The evidence shows that Acierno waited until over a year after he was aware of the alleged injury and until after seven buildings had been completed on the project before filing this suit. Moreover, Acierno could have filed a direct challenge with the County back in 1997. This is so because there is evidence that he has known about the events giving rise to this lawsuit since at least August of 1997.

After applying the factors articulated under Rule 19(b) of the Federal Rules of Civil Procedure, the court cannot in equity and good conscience allow this action to proceed without the County.

### B. Substantive Legal Claims

Preit–Rubin also maintains that it is entitled to summary judgment as a matter of law because Acierno cannot establish his claims for tortious interference with prospective economic advantage and conversion. The court will address each of these claims in turn.

#### 1. Tortious Interference with Prospective Economic Advantage

■ In order to prove a claim for tortious interference with prospective contractual relations, Acierno must establish (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer;

(3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted. *See McHugh v. Board of Educ. of the Milford School Dist.*, 100 F.Supp.2d 231, 247 n. 15 (D.Del.2000). All of these factors must be considered "in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner" *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del.Super.Ct.1981) (citations omitted); *see also Everest Properties II, L.L.C. v. American Tax Credits Properties II, L.P.*, No. 99C–08–122–WTQ, 2000 WL 145757, at *5 (Del.Super.Ct. Jan. 7, 2000))

 Acierno cannot establish a claim for tortious interference with prospective economic advantage as a matter of law. First, when the court considers Preit–Rubin's action in light of its privilege to compete and protect its own business interests, it is clear that Preit–Rubin has not engaged in any wrongful conduct. *See In re Frederick's of Hollywood, Inc. Shareholders Litig.*, No. 15944, 1998 WL 398244, at *6 (Del.Ch. July 9, 1998). Acierno merely alleges that Preit–Rubin did nothing to disabuse the County of the notion that his property need not be considered in the TIS. Acierno has not established that Preit–Rubin, as his competitor, has an obligation to do that. Moreover, Acierno does not and cannot establish what conduct of Preit–Rubin's actually misled the County. Acierno's August 7, 1999 letter strongly refutes any claims that the County was misled.

Acierno's tortious interference claim fails for a second reason as well. Acierno has not established that he has actually suffered any damages in this case. *See id.* Based on evidence supplied by Acierno, the State still appears to be willing to meet its commitments to Acierno's property. For example, the State may be able to accommodate traffic from Acierno's property in another manner. Because Acierno cannot establish that Preit–Rubin's conduct was actually improper or that the State will not honor its commitments to the property, his claim for intentional in-

terference with prospective economic advantage fails as a matter of law.

### 2. Conversion

 Acierno's claim for conversion also fails as a matter of law. Conversion is the "wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it." *Resource Ventures Inc. v. Resources Mgmt. Int'l, Inc.*, 42 F.Supp.2d 423, 438 (D.Del.1999). First, there is no tangible property over which the defendant could have exercised dominion. Under Delaware law, a party cannot maintain a conversion claim for intangible property unless the property is "intangible goods where the intangible property relations are merged into a document." *See id.* at 439 (citations omitted). Moreover, as Acierno himself has demonstrated, there is evidence showing that the State is still committed to its obligations to his property, and thus, nothing may have been taken from him. Finally, for the reasons discussed above, Acierno cannot establish that Preit–Rubin's conduct was wrongful in this case. Thus, Acierno's claim for conversion fails as a matter of law as well.

## V. CONCLUSION

Because Acierno has failed to join an indispensable party, New Castle County, and because Acierno cannot establish his claims of tortious interference with prospective economic advantage and conversion, the court will grant the Preit–Rubin's motion for summary judgment. The court will issue an order to this effect in conjunction with this opinion.